UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAMES D. SMITH,

                              Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

<u>DECISION & ORDER</u>

19-CV-0024MWP

**PRELIMINARY STATEMENT**

        Plaintiff James D. Smith ("Smith") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 1, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned.  (Docket # 16).

        Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket ## 9, 14).  For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

## **DISCUSSION**

**I.     Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

        A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

> (1) whether the claimant is currently engaged in substantial gainful activity;
>
> (2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";
>
> (3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");
>
> (4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform his past work; and
>
> (5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.     The ALJ's Decision

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. Under step one of the process, the ALJ found that Smith had not engaged in substantial gainful activity since November 13, 2014, the alleged onset date. (Tr. 13).[1] At step two, the ALJ concluded that Smith had the severe impairments of "cerebral vascular accident (CVA) with left-sided weakness[,] coronary artery disease with history of two heart attacks[,] and uncontrolled diabetes mellitus." (*Id.*). The ALJ also found that Smith had been diagnosed with hypertension, which was "asymptomatic and well-controlled," high cholesterol, for which there was no evidence of any work-related limitations, and suffered from a history of substance abuse, particularly marijuana use, which was nonsevere. (Tr. 13-14). At step three, the ALJ determined that Smith did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments in the Listings. (Tr. 14).

The ALJ concluded that Smith retained the RFC to perform light work but with certain limitations. (*Id.*). Specifically, the ALJ found that Smith could lift and carry twenty pounds occasionally and ten pounds frequently; sit up to six hours and stand and/or walk six hours in an eight-hour workday; occasionally balance, kneel, crouch and crawl; never use his left

---

[1] The administrative transcript (Docket # 7) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

4

hand for hand controls or his left foot for foot controls; occasionally climb ramps or stairs but never climb ladders, ropes or scaffolds; occasionally reach with his left arm, including overhead reaching; and, occasionally handle and finger objects with his left hand.  (*Id.*).  The ALJ also found that Smith should avoid all exposure to hazards, such as unprotected heights and moving machinery.  (*Id.*).  At steps four and five, the ALJ found that Smith had no past relevant work, but, based on Smith's age, education, work experience, and RFC, that other jobs existed in significant numbers in the national economy that Smith could perform, such as usher, cafeteria attendant, and school bus monitor.  (Tr. 24-26).  Accordingly, the ALJ found that Smith was not disabled.  (Tr. 26).

### III.    Smith's Contentions

Smith contends that the ALJ's determination that he is not disabled is not supported by substantial evidence and is the product of legal error.  (Docket ## 9, 15).  First, Smith argues that the ALJ erred by rejecting every medical opinion in the record, which caused the ALJ to improperly reach an RFC determination based on his own lay interpretation of the medical evidence.  (Docket ## 9-1 at 12-19; 15 at 1-2).  Second, Smith maintains that the ALJ committed reversible error by failing to "weigh, mention, or even exhibit" a December 18, 2017 opinion from Smith's treating physician assistant, Gary Wysocki ("Wysocki"), RPA-C, even though Smith submitted that opinion prior to the ALJ's January 31, 2018 decision.  (Docket ## 9-1 at 19-24; 15 at 3-5).  Alternatively, Smith contends that the Appeals Council erred by failing to review or consider the December 2017 opinion.  (Docket # 9-1 at 22-24).

## IV.    Analysis

### A.    Wysocki's December 18, 2017 Opinion

I turn first to Smith's contention that the ALJ erred by ignoring Wysocki's December 18, 2017 opinion ("Wysocki's 2017 opinion") relating to the physical limitations associated with Smith's history of a CVA suffered in November 2014, long-standing diabetes mellitus, and arteriosclerotic heart disease, which began in June 2015.  (Docket # 9-1 at 19-22; *see also* Tr. 31-33).  Smith's principal argument is that although "the ALJ was note [sic] required to assign controlling weight to PA Wysocki's other source opinion, [the ALJ] was still required assign [sic] it weight and explain his rationale for doing so."  (Docket # 9-1 at 21).  In Smith's view, the ALJ's "total failure to account for this opinion reflected an 'out of hand' rejection" of the opinion, which was improper and warrants remand.  (*Id.*).

Citing the so-called "five-day rule," the Commissioner responds that the ALJ did not need to consider Wysocki's 2017 opinion because "it was not properly submitted prior to the hearing, and neither [Smith] nor his attorney representative properly informed the ALJ of this evidence prior to the hearing."  (Docket # 14-1 at 20 (citing 20 C.F.R. §§ 404.935(a), 416.1435(a))).  The Commissioner also maintains that Wysocki's 2017 opinion would not have changed the ALJ's RFC assessment, thus making any error harmless.  (*Id.* at 22).

According to the five-day rule, "[e]ach party must make every effort to ensure that the [ALJ] receives all of the evidence and must inform [the Social Security Administration ("SSA")] about or submit any written evidence . . . no later than 5 business days before the date of the scheduled hearing[;] [i]f [the claimant] do[es] not comply with this requirement, the [ALJ] may decline to consider or obtain the evidence, unless the circumstances described in paragraph (b) of [20 C.F.R. §§ 404.935, 416.1435] apply."  20 C.F.R. §§ 404.935(a), 416.1435(a) (effective

6

January 17, 2017).  In the event that the claimant has evidence and has missed this five-day deadline, the ALJ "will accept the evidence if he or she has not yet issued a decision and [the claimant] did not inform [the SSA] about or submit the evidence before the deadline because . . . [an] unusual, unexpected or unavoidable circumstance beyond [the claimant's] control prevented [the claimant] from informing [the SSA] about or submitting the evidence earlier."  *Id.* at §§ 404.935(b)(3), 416.1435(b)(3).  The regulation enumerates various examples of "unusual, unexpected or unavoidable circumstance[s]," one of which is that the evidence was not received by the deadline despite the claimant's "active[] and diligent[]" efforts to obtain such evidence from the source.  *Id.* at §§ 404.935(b)(3)(iv), 416.1435(b)(3)(iv).[2]

        Here, Smith neither submitted, nor informed the ALJ about, Wysocki's 2017 opinion in accordance with the deadline specified in the five-day rule.  At the administrative hearing, the ALJ specifically asked Smith's representative if any additional information needed to be submitted into the record.  (Tr. 40).  Smith's representative only identified records from May 2016 through April 2017 that were missing from OLV Family Care Center, Catholic Health System ("OLV") – where Wysocki treated Smith.  (Tr. 40-41).  The ALJ ultimately received those records and made them part of the record at Exhibit 14F.  (Tr. 42, 531-57).  Smith's representative did not mention any other outstanding records, let alone an opinion from Wysocki.  (*See* Tr. 40-42).

        Smith submitted Wysocki's 2017 opinion via facsimile to the Office of Disability Adjudication and Review ("ODAR") in Buffalo, New York, on January 21, 2018.  (Tr. 31).  A time-stamped receipt on the cover sheet of that facsimile reveals that the ODAR received the

---

[2] None of the other exceptions to the five-day rule, or other examples of what constitutes an "unusual, unexpected, or unavoidable circumstance" beyond the claimant's control, appear applicable here.  *See generally* 20 C.F.R. §§ 404.935(b), 416.1435(b).

7

opinion on January 24, 2018 – nine months after the April 25, 2017 administrative hearing and, as it turned out, just one week before the ALJ's January 31, 2018 decision. (Tr. 26, 31, 36).

Smith fails to address the timeliness of his submission of Wysocki's 2017 opinion or even acknowledge the five-day rule in his moving brief. (*See generally* Docket # 9-1). In his reply papers, however, Smith contends that "the ALJ did not even address [Wysocki's 2017] opinion in relation to the [f]ive-day rule" and thus "it is unclear what the ALJ did at all in this matter" regarding the opinion. (Docket # 15 at 3-4). In Smith's view, the Commissioner's argument essentially amounts to a *post hoc* rationalization of the ALJ's handing of this evidence. (*Id.* at 4). On this narrow point, I agree with Smith.

In his otherwise thorough decision, the ALJ does not specifically discuss Wysocki's 2017 opinion in the context of the five-day rule or its applicable exceptions. In fact, the ALJ does not reference Wysocki's 2017 opinion at all in his decision and the evidence is not exhibited to the record that was considered by the ALJ in reaching his disability determination. (*See* Tr. 11-30). Rather, the ALJ mentions the five-day rule in one sentence, indicating that "[Smith] submitted or informed [the ALJ] about *all* written evidence at least five business days before the date of [Smith's] scheduled hearing" (Tr. 11 (citing 20 C.F.R. §§ 404.935(a), 416.1435(a)) (emphasis supplied)), a statement which is inaccurate in light of Smith's submission of Wysocki's 2017 opinion prior to the ALJ's decision. As the Commissioner concedes, the ALJ's statement may actually suggest that he "was not aware that [Smith] had submitted Mr. Wysocki's opinion just a few days before the ALJ issued his January 31, 2018 decision" (Docket # 14-1 at 21) – a suggestion that seems reasonable in light of the ALJ's thorough consideration of the record evidence.[3]

---

[3] The SSA's internal guidelines for "Admitting Evidence Submitted Less Than Five Business Days Before The Hearing Or At Or After The Hearing," found in the Hearing, Appeals, and Litigation Law Manual

8

In other words, despite Smith's submission and the ODAR's apparent receipt of Wysocki's 2017 opinion *prior* to the ALJ's decision, it is not clear that this evidence was received or its admissibility considered by the ALJ in evaluating Smith's disability claims. Indeed, because Smith's submission of Wysocki's 2017 opinion was untimely but still earlier than the ALJ's issuance of his decision, the ALJ would have had the discretion either to admit or exclude the evidence, unless Smith could show that an exception to the five-day rule applied. *See generally* 20 C.F.R. §§ 404.935, 416.1435.

In the absence of any explanation from the ALJ regarding his treatment of Wysocki's 2017 opinion in the context of the five-day rule, this Court cannot determine whether the ALJ was aware of and considered the opinion.  This deficiency precludes meaningful judicial review of whether the ALJ's disability determination is supported by substantial evidence. Remand is thus warranted to enable the ALJ to consider Wysocki's 2017 opinion pursuant to 20 C.F.R. §§ 404.935, 416.1435.  *See*, *e.g.*, *Jonathan V. v. Comm'r of Soc. Sec.*, 2020 WL 1270655, *4-5 (N.D.N.Y. 2020) (remanding "so the Commissioner can clarify consideration" of evidence neither referenced in the ALJ's decision nor exhibited to the record after the ALJ's administrative hearing; "the [c]ourt's review indicates that these records were not considered by the ALJ and the ALJ did not address any violations of the five-day rule or applicable

---

("HALLEX"), further suggest that the ALJ was unaware of Wysocki's 2017 opinion.  First, as explained above, he did not exhibit this evidence to the record.  *See* HALLEX § I-2-6-59, 2017 WL 1632957, *2 (S.S.A. 2017) ("[i]f an ALJ finds that the claimant did not inform the agency or submit evidence at least five business days before the scheduled hearing but the circumstances in 20 CFR 404.935(b) and 416.1435(b) apply, the ALJ will accept the evidence into the record and mark the evidence as an exhibit[;] [t]he ALJ may, but is not required to, address in the decision why he or she considered the evidence").  Moreover, the ALJ did not explain why the evidence was not considered in the context of the five-day rule.  *See id.* ("if an ALJ does not find that the circumstances in 20 CFR 404.935(b) and 416.1435(b) apply, the ALJ will not exhibit the untimely evidence[;] [t]he ALJ will briefly explain in the text of that decision that: [a]dditional evidence was submitted . . . [;] [t]he claimant did not establish a reason under 20 CFR 404.935 and 416.1435 for not informing the agency about or submitting it within the required timeframes (addressing any specific reason raised by the claimant); and [t]herefore, the ALJ declined to consider the evidence under 20 CFR 404.935 and 416.1435").

9

exceptions[;] . . . [b]ecause the evidence was not addressed or exhibited by either the ALJ or the Appeals Council, it remains unclear if this additional evidence was ever properly considered by the Agency[;] . . . [h]ere, it is not clear the additional evidence was ever weighed at all and that should not be undertaken by the [c]ourt in the first instance[;] . . . this [c]ourt therefore is unable to determine whether the final decision of the Commissioner is supported by substantial evidence"); *Samantha D. v. Comm'r of Soc. Sec.*, 2020 WL 1163890, *7-9 (N.D.N.Y. 2020) ("[t]he treating physician medical source statement from [plaintiff's primary care doctor] was not mentioned and apparently was not considered by the ALJ or the Appeals Council even though it was received by the SSA one week before the ALJ filed his decision and almost one year before the Appeals Council denied review[;] . . . [t]he SSA erred in failing to address the question of whether [p]laintiff had good cause for the tardy submission of [plaintiff's primary care doctor's] medical source statement, and it would be inappropriate for the [c]ourt to consider that factual issue as a matter of first impression on appeal[;] [a]t a minimum, this case must be remanded for consideration of whether this treating source opinion should have been accepted for consideration by the Commissioner based on an exception to the five-day rule"); *Hall v. Saul*, 2019 WL 4600626, *5-6 (N.D. Ohio 2019) (remanding for the ALJ to consider treating source's opinion, which was submitted after the administrative hearing and almost three weeks prior to the ALJ's decision, in conjunction with 20 C.F.R. §§ 404.935(b), 416.1435(b); "[p]laintiff is correct that the ALJ did not acknowledge that he received [the treating source's] opinion evidence and he did not address it in his decision, even to determine whether it complied with the appropriate regulations[;] [i]t is unclear to the [c]ourt whether the letter from [p]laintiff's counsel to the ALJ and the discussions had by the ALJ and [p]laintiff's counsel at the hearing includes requests for opinion evidence from [the treating source][;] [w]ithout an acknowledgment by the

ALJ of receipt of this opinion evidence from [the treating source] or an explanation as to why this evidence was not considered, the [c]ourt cannot ascertain whether the evidence made it into the record, whether [the] ALJ received the evidence, or whether he considered it and found that it did not comply with the regulations"); *Dougherty v. Saul*, 2019 WL 4565186, *3-4 (D. Colo. 2019) (remanding "for the ALJ to clarify his analysis" concerning certain evidence in relation to the five-day rule; "[w]hile the ALJ indeed stated that he would not be admitting Exhibit 10F, his analysis belied that statement[;] [a]s such, [the court] cannot be certain that the ALJ based his decision on substantial evidence, because the ALJ's analysis is unclear"); *Palombo v. Berryhill*, 2018 WL 3118286, *4-5 (D.N.H. 2018) (remanding for the ALJ to consider additional evidence pursuant to a prior version of the five-day rule; "it is unclear whether the ALJ relied upon [the prior version of the five-day rule] to justify rejection of the [evidence submitted by claimant][;] [i]n her decision, the ALJ does not reference [the evidence] or evaluate its admissibility under [the prior version of the five-day rule][;] [t]o the extent the ALJ did rely on the regulation to reject the submission of [the evidence], she never explained her reasoning, which prevents the court from conducting any meaningful judicial review[;] [t]hat error justifies remanding the case").

Moreover, remanding this case for the ALJ to consider Wysocki's 2017 opinion is especially appropriate here where the Court cannot say that the evidence, if admitted, would not affect the ALJ's disability determination. The record establishes that Wysocki and Smith had a long and consistent treating relationship; Smith established care with Wysocki at OLV in January 2015 following Smith's November 2014 stroke and continued treatment with Wysocki until at least March 2017. (Tr. 330, 531). Beyond numerous treatment notes in the record, which the ALJ detailed (Tr. 17-24), the record also contains two other rather restrictive opinions

11

from Wysocki regarding Smith's employability, which the ALJ considered and discounted (Tr. 24).

Specifically, the ALJ assigned "some weight" to the "Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination" completed by Wysocki on February 18, 2015.  (Tr. 363-64).  At that time, Wysocki noted that Smith had ongoing, permanent functional deficits from his CVA, for which Smith had a poor prognosis.  (Tr. 363).  Wysocki also indicated that Smith had diabetes, hypertension, and hyperlipidemia, all of which were permanent conditions with good prognoses if Smith were compliant with his medication.  (*Id.*).  Based on these conditions, Wysocki opined that Smith was "very limited" in his ability to walk, stand, lift, carry, push, pull, bend, use his hands, climb stairs or perform other climbing activities.  (Tr. 364).  With respect to associated mental limitations, Wysocki opined that Smith was "very limited" in his ability to function in a work setting at a consistent pace.  (*Id.*).  Wysocki concluded that Smith could not stand, walk, climb, push, pull, lift, or carry in a work environment, and he recommended that Smith continue with physical rehabilitation programs.  (*Id.*).

The ALJ discussed this opinion and assigned it "some weight."  (Tr. 17, 24).  In doing so, the ALJ noted that Wysocki completed this opinion "only three months after [Smith's] CVA, and prior to [Smith] completing occupational therapy, which provided significant benefit."  (Tr. 24).  The ALJ also stated that "nothing" in Wysocki's treatment notes "indicat[ed] that [Smith] had any continued musculoskeletal or neurologic deficits, which would cause limitations in standing or walking."  (*Id.*).  Finally, the ALJ referenced Smith's hearing testimony, during which Smith indicated that "the only limitation he continued to have with regard to his stroke was some weakness in the left upper extremity."  (*Id.*).

12

In addition, the ALJ considered a statement made by Wysocki in a December 20, 2016 treatment note that Smith was "still unable to work" because of his CVA with residuals, diabetes mellitus, and arteriosclerotic heart disease.[4]  (Tr. 22-23 (citing Tr. 535-37)).  The ALJ assigned this statement "little weight" because Wysocki "did not provide any specific function-by-function limitations, or state what 'residuals' [Smith] continued to experience" and Wysocki's examination of Smith on that date "was unremarkable" except for the neurologic exam showing "chronic residual left-sided deficits from prior CVA."  (Tr. 24 (citing Tr. 537)).  Moreover, the ALJ noted that Wysocki's statement was inconsistent with his examination of Smith on September 23, 2016, at which Smith showed "no motor/sensory loss" on neurological examination and "normal ranges of motion" throughout all his joints.  (*Id.* (citing Tr. 546)).

As mentioned above, Wysocki's 2017 opinion similarly related to Smith's CVA suffered in November 2014, long-standing diabetes mellitus, and arteriosclerotic heart disease beginning in June 2015.  (Tr. 32).  As with his 2015 opinion, Wysocki continued to opine that Smith was "very limited" in his ability to walk, stand, lift, carry, push, pull, bend, use his hands, climb stairs or perform other climbing activities.  (Tr. 33).  In terms of mental limitations, Wysocki again opined that Smith was "very limited" in his ability to function in a work setting at a consistent pace, but further opined that Smith was "moderately limited" in his ability to understand and remember instructions and carry out instructions.  (*Id.*).  Noting that the "residuals" associated with Smith's CVA were permanent, Wysocki no longer recommended that Smith engage in any rehabilitation programs, a change in opinion from 2015.  (*Compare* Tr. 33 *with* Tr. 364).

---

[4] The ALJ diligently and appropriately sought a consultative examination of Smith after the hearing in light of the development of Smith's heart condition.  (*See* Tr. 559-69; *see also* Tr. 62, 69).

Without reaching the merits of Wysocki's 2017 opinion, the opinion appears to address and potentially remedy certain of the defects that the ALJ identified in Wysocki's two earlier opinions.  For instance, the ALJ discounted the 2015 opinion in part because it was issued only a few months after Smith's November 2014 CVA.  Yet Wysocki's 2017 opinion – completed over three years after Smith's stroke – reflects largely the same physical limitations as his 2015 opinion, accompanied by the additional opinion that Smith need not continue with rehabilitation programs.  Additionally, the new opinion seemingly supports Wysocki's 2016 opinion and assesses functional limitations associated with Smith's impairments.

For these reasons, the Court cannot say that any error in failing to consider Wysocki's 2017 opinion was harmless.  *See*, *e.g.*, *Jonathan V. v. Comm'r of Soc. Sec.*, 2020 WL 1270655 at *4 ("although the [c]ourt does not reach a finding on the materiality of [evidence not considered pursuant to the five-day rule], the [c]ourt finds remand is required because such evidence directly contradicts portions of the ALJ's analysis"); *Hall v. Saul*, 2019 WL 4600626 at *5 ("[t]he ALJ's failure to acknowledge or address [the treating source's] opinion evidence [] in his decision is not harmless error because it may have an impact on the ALJ's decision, if it is deemed to be a part of the record and therefore part of the record that the ALJ must consider"); *Cottrell v. Colvin*, 206 F. Supp. 3d 804, 810 (W.D.N.Y. 2016) (failure to consider medical opinion not harmless where court was "not convinced . . . that the ALJ's consideration of [the] opinion would not change the outcome of th[e] matter[;] . . . [o]n remand, it is certainly possible that a proper analysis of [the] opinion in accordance with [relevant regulations] could alter the ALJ's decision").

Accordingly, on remand, the ALJ should consider Wysocki's 2017 opinion in accordance with 20 C.F.R. §§ 404.935, 416.1435.[5]  If the ALJ decides to accept the evidence into the record, he should evaluate and weigh the opinion consistent with the relevant regulations.  *See*, *e.g.*, *Samantha D. v. Comm'r of Soc. Sec.*, 2020 WL 1163890 at *9-10 ("on remand, the Commissioner must determine whether [plaintiff's primary care doctor's] tardy medical source statement should be accepted for consideration under the regulatory exceptions to the five-day rule[;] [i]f that opinion evidence should have been accepted, it should be considered and weighed pursuant to the standards applicable to treating physicians, along with the other medical evidence").

### B.     Smith's Remaining Contentions

Smith also contends that the ALJ erred by rejecting every medical opinion in the record and improperly reached an RFC determination based on his own lay interpretation of the medical evidence.  (Docket ## 9-1 at 12-19; 15 at 1-2).  Given my finding that remand is warranted for the ALJ to consider the admissibility of Wysocki's 2017 opinion, I do not address Smith's remaining contentions.  *See*, *e.g.*, *Jonathan V.*, 2020 WL 1270655 at *5 ("[b]ecause remand is required [for the ALJ to clarify consideration of evidence pursuant to the five-day rule,] . . . the [c]ourt declines to reach findings on issues related to the ALJ's RFC and [s]tep [f]ive determinations"); *Samantha D.*, 2020 WL 1163890 at *10 ("[h]aving found that remand is necessary to address [plaintiff's primary care doctor's tardy medical source statement], the [c]ourt has not resolved [p]laintiff's arguments that the ALJ erred in other respects"); *Palombo v.*

---

[5]  Smith argues that an exception to the five-day rule applies regarding his late submission of Wysocki's 2017 opinion.  Specifically, Smith contends that he "actively and diligently sought" Wysocki's 2017 opinion, but that it "did not yet exist" at the time of the hearing, and thus it was "impossible for [his] representative to provide notice of or submit the opinion five days before the hearing."  (Docket # 15 at 4-5 (referencing 20 C.F.R. §§ 404.935(b)(3)(iv), 416.1435(b)(3)(iv))).  Smith in no way elaborates on his "active[] and diligent[]" efforts to obtain Wysocki's 2017 opinion or explain when those efforts began.  In any event, the applicability of any exceptions to the five-day rule is for the ALJ to consider on remand in the first instance.

*Berryhill*, 2018 WL 3118286 at \*5 (declining to address plaintiff's remaining arguments where remand was warranted for consideration of evidence pursuant to prior version of five-day rule).

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 14)** is **DENIED**, and Smith's motion for judgment on the pleadings **(Docket # 9)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated:  Rochester, New York
        July 22, 2020